IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,   )<br>    )<br>    Plaintiff,   )<br>    )<br>    v.   )<br>    )<br>    )  **COMPLAINT**<br>    )  **Civil Action No:** 3:18-cv-608<br>THE STATE OF LOUISIANA,   )<br>    )<br>    Defendant.   )<br>    ) | |

## INTRODUCTION

1. The United States brings this action to enforce the rights of adults with serious mental illness to receive services in the most integrated setting appropriate to their needs. The State of Louisiana administers and funds its programs and services for adults with serious mental illness in a manner that results in their unnecessary institutionalization in public and private nursing facilities, and places them at serious risk of such institutionalization, in violation of Title II of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12131-12134, and its implementing regulations.

2. Life for residents of nursing facilities is highly regimented, with little autonomy to make choices in daily life. Residents are isolated from the larger community and have limited opportunities to interact with individuals without disabilities. Nursing facilities are not integrated settings.

3. Integrated and appropriate services for adults with serious mental illness exist within the State's publicly funded services. The State could reasonably modify its systems to provide

adequate community-based services to those adults with serious mental illness who are inappropriately institutionalized, or at serious risk of institutionalization, in nursing facilities.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under Title II of the ADA, 42 U.S.C. § 12133, and 28 U.S.C. §§ 1331, 1345. The Court may grant the relief sought in this action pursuant to 28 U.S.C. §§ 2201-2202; 28 C.F.R. §§ 35.170-174, 190(e).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), given that a substantial part of the acts and omissions giving rise to this action occurred in the Middle District of Louisiana.

## PARTIES

6. Plaintiff is the United States of America. The Attorney General brings this civil action to seek remedies for violations of Title II of the ADA. *See* 42 U.S.C. §§ 12133-12134; 28 C.F.R. §§ 35.170-174, 190(e).

7. Defendant, State of Louisiana, is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1), and is therefore subject to Title II of the ADA, 42 U.S.C. § 12131 *et seq*., and its implementing regulations, 28 C.F.R. pt. 35. The State is responsible for ensuring that State programs and services conform to the ADA. Louisiana administers and funds services for adults with serious mental illness through the Louisiana Department of Health.

8. The Louisiana Department of Health (LDH) manages the State's Medicaid program, which includes coverage of behavioral health services to Medicaid-enrolled adults with serious mental illness. LDH is responsible for regulating, overseeing, and providing funding for community-based behavioral health services, including permanent supported housing.

9. LDH also regulates, oversees, and provides funding for home and community-based services for adults with physical health needs, including the Community Choices Waiver, and Long-Term Personal Care Services (LT-PCS).

## FACTUAL ALLEGATIONS

### A. Individuals with Serious Mental Illness Are Persons with Disabilities Protected by the ADA.

10. Individuals with serious mental illness admitted to or at serious risk of institutionalization in nursing facilities have illnesses such as schizophrenia, bipolar disorder, or major depression that substantially limit one or more major life activities, including personal care, working, concentrating, thinking, and sleeping. They are persons with disabilities as defined by the ADA.

11. People with serious mental illness in nursing facilities in the State and those at serious risk of entry into those facilities are similar to people with serious mental illness who receive services in the community. They have similar diagnoses and needs as people who live successfully in more independent community-based settings with the types of supports and services that currently exist in the State's community behavioral health system. The great majority of these individuals are qualified to receive mental health services in the community in integrated settings, and do not object to receiving services in those settings.

### B. Nursing Facilities Are Segregated, Institutional Settings.

12. Louisiana's nursing facilities are segregated, institutional settings, where residents are unable to interact with people without disabilities to the fullest extent possible. People confined to those nursing facilities lack meaningful opportunities to choose roommates, friends, living arrangements, daily schedule, or even food and mealtimes. They lack meaningful choices for work or other ways to spend their days. Many facilities in the State have locked exits, and some

3

also have locked gates around the building exterior. They are largely isolated from the larger community.

## C. Thousands of Louisianans with Serious Mental Illness Are Needlessly Entering and Living in Nursing Facilities.

13. Individuals with serious mental illness live in nearly all of Louisiana's 258 Medicaid-funded nursing facilities. At least eight facilities, including the State-run Villa Feliciana in Jackson, Louisiana, are known to "specialize" in taking individuals with serious mental illness. Nationally, Louisiana has one of the highest percentages of nursing facility residents with serious mental illness, with at least 3,800 individuals, or 14.5% of all residents reported in 2016. Residents with serious mental illness tend to be among the younger nursing facility residents with the fewest care needs.

14. About 1,000 Louisianans with serious mental illness enter nursing facilities each year, often directly from hospitals. They often enter nursing facilities after years of repeated hospitalizations for psychiatric crisis, homelessness, untreated substance use disorders, and incarcerations. Once institutionalized in nursing facilities, some face long-term commitments to locked "behavioral" units; others are admitted on a temporary placement that becomes long-term, effectively precluding the opportunity to return to a home in the community.

15. Individuals with serious mental illness in nursing facilities in Louisiana who express a desire to leave the facility and return to their own communities routinely receive little or no assistance to do so. One resident woman in her fifties experienced a psychiatric crisis after the death of a family member and ended up in a nursing facility. Four years later, she is still in the facility, though she is desperate to return home, spend time with people her own age, find work, and enjoy community life again. Seventy-three percent of people with serious mental illness

4

placed in nursing facilities stay in those facilities for longer than a year, and both providers and resigned residents expect that they will stay for the rest of their lives.

16. Louisiana has long recognized that it unnecessarily relies on institutions at the expense of its community-based system and fails to provide sufficient services to enable adults with mental illness to live in the community.

17. In 2011, the State acknowledged that over the past two decades, it "has remained dependent on psychiatric hospital levels of care. . . . While other states were re-organizing their funding approach and moving to a greater proportion of high intensity community based programs, Louisiana continued to have greater fiscal resources directed toward inpatient care." Louisiana Office of Behavioral Health, *FY 2012 Combined Behavioral Health Assessment and Plan Block Grant Application,* at 29 (Sept. 1, 2011).

18. Community-based services for adults with behavioral health needs already exist within Louisiana's behavioral health system, including psychiatric services, intensive case management, Community Psychiatric Support and Treatment (CPST), Psychosocial Rehabilitation (PSR), crisis services, peer support services, Assertive Community Treatment, supported employment, substance use disorder treatment, and permanent supported housing. These services are not available uniformly throughout the State's system. Even where available, they are not available in sufficient quantities to meet the need.

19. Home and community-based services including personal care, home health, and nursing services can support many adults with co-occurring mental and physical health care needs. Louisiana's Community Choices Waiver, providing the most comprehensive package of nursing, home health, and personal care services, serves fewer than 5,000 people. The waiver has a

waitlist of 36,000 people. Louisiana's less-intensive Long-Term Personal Care Services (LT-PCS) program serves 23,000 people.

20. Insufficient in-home supports for both behavioral and physical health needs directly contribute to nursing facility confinement for many individuals who may need only limited in-home support services in order to remain in their own homes.

21. Louisiana operates a substantial permanent supported housing program. The program assists some people in transitioning from nursing facilities but does not have sufficient supported housing or transition staff available to meet the needs of individuals with serious mental illness who remain institutionalized. Many individuals with serious mental illness who would like to transition from nursing facilities are never even referred to the entity designated to manage transitions.

**D. Louisiana's Administration of Its Service System Has Caused Unnecessary Segregation of Individuals with Serious Mental Illness in Nursing Facilities and Placed Others At Serious Risk of Unnecessary Institutionalization.**

22. LDH administers Healthy Louisiana (the State's Medicaid program), the Office of Behavioral Health, and the Office of Adult and Aging Services. Through these programs, the State determines what services will be provided, where services will be available, how services will be funded, who will be eligible for services, how service quality will be evaluated, and what providers are permitted to offer the services.

23. LDH, through its Office of Adult and Aging Services and its Office of Behavioral Health, oversees the Preadmission Screening and Resident Review (PASRR) program, pursuant to the Social Security Act, 42 U.S.C. § 1396r. Congress enacted PASRR as part of the Nursing Home Reform Act of 1987, "specifically to end the practice of inappropriately institutionalizing individuals with mental illness . . . in nursing homes." *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 285 (E.D.N.Y. 2008).

24. The State has not implemented an effective screening and evaluation process to divert qualified individuals away from nursing facility admission and to connect them to appropriate community-based services, as required by law. Louisiana has an 86% nursing facility approval rate for people with serious mental illness. Many people with serious mental illness are never offered community-based services as an alternative to a nursing facility placement.

25. Evidence-based practices like Assertive Community Treatment (ACT), permanent supported housing, mobile crisis services, supported employment, and peer support reduce the need for institutional care. Individuals with serious mental illness living in the community may need one or more of these community-based services at any given time to avoid unnecessary hospitalization. Yet the State fails to provide sufficient community-based behavioral health services, leaving thousands of people with no viable alternative to entering a nursing facility to obtain needed support.

26. People with serious mental illness are also forced into nursing facilities when they cannot access home and community-based services like personal care, home health, and nursing, such as when they need help with housekeeping, meal preparation, and grocery shopping and none is available.

27. Most nursing facilities have neither the expertise nor the incentive to conduct effective transition planning for people with serious mental illness. Transitions occur infrequently, and may be short-lived because of the failure to connect individuals to effective and appropriate community-based services.

28. Without effective diversion and transition systems, Louisiana will continue to unnecessarily institutionalize individuals with serious mental illness who could appropriately be served in the community.

**E. The State Can Provide Services in Integrated Settings by Reasonably Modifying Its Community-Based Services Systems.**

29.     The State can make reasonable modifications to its community-based services system to serve in integrated community settings people with serious mental illness who are currently confined to or at serious risk of entry into nursing facilities.

30.     The types of services needed to support people with serious mental illness in community-based settings already exist in Louisiana's community-based service systems.

31.     Reasonable modifications include expansion of the capacity to provide existing services, reallocation of funds from institutional settings, and maximization of federal Medicaid funding.

**F. The Department of Justice Investigation**

32.     The United States received a complaint of discrimination about Louisiana's overuse of nursing facilities to provide services to people with serious mental illness in 2014.  Following an investigation under Title II of the ADA, the United States notified the Governor of its conclusion that the State fails to provide services to adults with mental illness in the most integrated setting appropriate to their needs as required by the ADA.  Letter from United States Department of Justice, Civil Rights Division to Governor John Bel Edwards (December 21, 2016).  The letter provided the State notice of its failure to comply with the ADA, and identified the steps necessary for the State to meet its obligations pursuant to federal law.

33.     All conditions precedent to the filing of this Complaint have been satisfied.

## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

## 42 U.S.C. §§ 12131-12134

34. The allegations of Paragraphs 1 through 33 of this Complaint are hereby re-alleged and incorporated by reference.

35. Defendant, State of Louisiana, is a public entity subject to Title II of the ADA, 42 U.S.C. § 12131(1).

36. The State violates the ADA by administering the State's public health system in a manner that denies qualified adults with serious mental illness the benefits of the State's services, programs, or activities in the most integrated setting appropriate to their needs, and by failing to reasonably modify the State's service system to avoid discrimination against adults with mental health disabilities. 42 U.S.C. § 12132; 28 C.F.R. 35.130.

37. The State's actions constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its implementing regulations at 28 C.F.R. pt. 35.

## **PRAYER FOR RELIEF**

The United States of America prays that the Court:

A. Grant judgment in favor of the United States on its Complaint and declare that the Defendant has violated Title II of the ADA, 42 U.S.C. §§ 12131 - 12134;

B. Enjoin Defendant from:

1. discriminating against adults with serious mental illness in Louisiana by failing to provide services, programs, or activities in the most integrated setting appropriate to their needs; and


2. failing to provide appropriate, integrated community services, programs, or activities to adults with serious mental illness in Louisiana so as to avoid placing these individuals at serious risk of institutionalization in nursing facilities; and

C. Order such other appropriate relief as the interests of justice may require.

This 6th day of June, 2018

BRANDON J. FREMIN
United States Attorney
Middle District of Louisiana

JOHN M. GORE
Acting Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief, Special Litigation Section

/s/ John J. Gaupp
JOHN J. GAUPP, LBN 14976
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
Fax: (225) 389-0685
E-mail: john.gaupp@usdoj.gov

MARY R. BOHAN
Deputy Chief
C. ADRIENNE MALLINSON
NH Bar No. 17126
Trial Attorney
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. - PHB
Washington, DC 20530
Telephone: (202) 353-1142
Fax: (202) 514-0212
adrienne.mallinson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Complaint* was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system and via email.

Baton Rouge, Louisiana, this 6th day of June, 2018.

<div align="right">/s/ John J. Gaupp</div>

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
C. Adrienne Mallinson, Mary R. Bohan
USDOJ, Special Litigation Section, Civil Rights Division
950 Pennsylvania Ave., NW, Washington, DC 20530-0001

## DEFENDANTS
STATE OF LOUISIANA

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Kimberly Sullivan, Stephen Russo
Louisiana Department of Health
628 N. 4th Street, P.O. Box 3836, Baton Rouge, LA 70821

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question *(U.S. Government Not a Party)*
[ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | PROPERTY RIGHTS | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | PERSONAL PROPERTY | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | LABOR | SOCIAL SECURITY | [ ] 480 Consumer Credit |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | | | [ ] 751 Family and Medical Leave Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| | | | | | [ ] 895 Freedom of Information Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | [ ] 790 Other Labor Litigation | FEDERAL TAX SUITS | |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | Habeas Corpus: | [ ] 791 Employee Retirement Income Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | IMMIGRATION | | |
| [ ] 290 All Other Real Property | [X] 446 Amer. w/Disabilities - Other | Other: | [ ] 462 Naturalization Application | | |
| | | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131–12134.
Brief description of cause:
Seeking injunctive relief for ADA violations denying integrated services to adults with serious mental illness.

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 06/06/2018
SIGNATURE OF ATTORNEY OF RECORD: s/ C. Adrienne Mallinson

**FOR OFFICE USE ONLY**
RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

Print    Save As    Reset